IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CHARLES P. FINNEY and
STEPHANIE FINNEY                                                                       PLAINTIFFS

v.                                    Case No. 1:22-cv-1005

SAEILO, INC. d/b/a KAHR ARMS                                                           DEFENDANT

**ORDER**

Before the Court is Defendant's Motion to Strike Plaintiffs' Expert.  ECF No. 37.  Plaintiffs responded.  ECF No. 43.  Defendant replied.  ECF No. 49.  The Court finds the matter ripe for consideration.

**I. BACKGROUND**[1]

This matter arises from the unintended discharge of a firearm and the resulting injury.  At some time prior to the events giving rise to this matter, Plaintiff Charles P. Finney ("Mr. Finney") purchased a Kahr Arms Model CW-40 semi-automatic pistol with serial number FG4729 ("Subject Pistol").  On the morning of December 24, 2018, Mr. Finney was using the bathroom in his home while wearing a holster containing the Subject Pistol on the right side of his pants.  The holster and Subject Pistol allegedly fell off his pants and onto the floor of the bathroom. The Subject Pistol allegedly discharged a single round upon contact with the floor.  The round discharged from the Subject Pistol entered and exited Mr. Finney's left leg, causing significant injury.  Plaintiffs allege that a law enforcement investigation of the circumstances found a chip in the bathroom floor and determined that the Subject Pistol discharged when it hit that spot on the floor.  Plaintiffs refer to such incidents as a "drop fire."  Plaintiffs assert that the Subject Pistol was not modified or changed in any way from the date of its purchase to the date of the incident.

---

[1] The factual background is derived from the general allegations within Plaintiffs' Amended Complaint.  ECF No. 32.

On December 15, 2021, Plaintiffs filed their Complaint against Defendant Saeilo, Inc. in the Columbia County, Arkansas Circuit Court. ECF No. 3. On January 14, 2022, Defendant removed this action to this Court pursuant to 28 U.S.C. § 1441. ECF No. 2. Defendant asserts that this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a).[2]

On August 18, 2023, Plaintiffs filed their Amended Complaint, which is the operative complaint in this matter. ECF No. 32. Though Plaintiffs' claims are not clearly or coherently delineated, the language in their allegations references negligence, breaches of express and implied warranties, and defective products.[3] Broadly, Plaintiffs seem to allege that Defendant, as designer and manufacturer of the Subject Pistol, sold the Subject Pistol in a defective and unreasonably dangerous condition that caused it to discharge a round without a pull of the trigger by being dropped onto the floor. Plaintiffs assert that the defect was the proximate cause of Mr. Finney's injuries. Plaintiffs seek damages related to medical expenses, loss of income, loss of earning capacity, pain and suffering, and loss of consortium between Mr. Finney and his wife, Plaintiff Stephanie Finney. Plaintiffs also seek punitive damages.

On June 3, 2024, Defendant filed the instant motion and a brief in support seeking to bar Plaintiffs' retained expert, Jack Belk ("Belk"), from offering his proffered expert opinion at trial. ECF Nos. 37 & 38. Defendant contends that Belk's opinion fails to meet every requirement of admissibility for expert opinions under Federal Rule of Evidence 702. Plaintiffs responded in

---

[2] The Court is satisfied that it has subject matter jurisdiction over Plaintiffs' claims under § 1332(a). Plaintiffs are both citizens of Arkansas, while Defendant is incorporated in Delaware and has its principal place of business in Pennsylvania. Also, Plaintiffs' assertion of damages (ECF No. 32, p. 16-18) clearly exceeds the jurisdictional threshold of $75,000.

[3] This uncertainty is reflected in the parties' pre-trial disclosures. In summarizing their claims, Plaintiffs state that they seek judgment against Defendant for "products liability" and elaborate no further. ECF No. 47, p. 1. Defendant has difficulty articulating Plaintiffs' claims as well, stating that Plaintiffs' "causes of action appear to sound in negligence and breach of warranty – although their Amended Complaint does not set forth separate and distinct causes of action." ECF No. 48, p. 2.

opposition, arguing that Belk's opinion satisfies every demand for admissibility. ECF No. 48. Defendants replied, arguing that Plaintiffs' response failed to demonstrate the admissibility of Belk's opinion and attempts to narrow the scope of Belk's testimony.

## II. LEGAL STANDARD

Opinion testimony of a qualified expert is admissible if it is "based on sufficient facts or data," is "the product of reliable principles and methods," and if it "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Civ. P. 702(b)-(d). The expert testimony must also "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). "The district court is thus vested with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). This gatekeeping function seeks "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The standard applies to all expert testimony, not just testimony from "scientific" experts. *Id*. at 147. The proponent of expert testimony must show by a preponderance of the evidence that the requirements of Rule 702 are satisfied. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). "Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." *U.S. v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (quotation omitted).

Screening potential expert witnesses is meant to determine if the testimony is "supported by appropriate validation—*i.e.,* 'good grounds,'" so that "a standard of evidentiary reliability" is

3

established. *Daubert*, 509 U.S. at 590. "The standard for judging the evidentiary reliability of expert evidence is 'lower than the merits standard of correctness.'" *Kuhn*, 686 F.3d at 625 (internal quotation omitted). Those seeking to present expert testimony "need not demonstrate that the assessments of their experts are correct, and trial courts are not empowered 'to determine which of several competing scientific theories has the best provenance.'" *Id*. (internal quotation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

Additional factors that a court should consider when evaluating the admissibility of expert witnesses include "(1) whether the theory or technique applied can be tested, (2) whether the theory or technique has been subject to peer review or publication, (3) the known or potential rate of error, and (4) whether it is accepted in the relevant discipline." *Kuhn*, 686 F.3d at 625 (citing *Daubert,* 509 U.S. at 593-94). The predominate focus is on the "principles and methods" of the expert and not on the subsequent conclusion. *Daubert,* 509 U.S. at 595. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]" *Coutentos*, 651 F.3d at 821 (quotation omitted). However, an expert opinion is "fundamentally unsupported" and should not be admitted if they have not reviewed the facts underlying the case to reach their conclusion. *Id*. (citations omitted). Also, "[e]xpert evidence may be excluded if the court determines 'that there is simply too great an analytical gap between the data and the opinion proffered.'" *Kuhn*, 686 F.3d at 625 (internal quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (8th Cir. 1997).

4

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands. There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456-57 (8th Cir. 2012) (quotation omitted); *and see Daubert,* 509 U.S. at 595 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one."). Some speculation by an expert is necessary and inevitable, but testimony that is "excessively speculative" cannot be admitted. *Grp. Health Plan, Inc. v. Phillip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) (citations omitted).

"A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Robinson v. GEICO Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quotation omitted); *and see In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) ("Indeed, cases are legion that under *Daubert*, liberal admission is prevalent.") (citations omitted). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758.

### III. DISCUSSION

Defendant argues that Belk is not qualified as an expert, that his testimony is not based on sufficient facts or data, that his testimony is not the product of reliable principles and methods, and that his testimony would not be helpful to the jury. The Court will address each aspect of Defendant's arguments for exclusion separately below.

**A. Belk's Qualification as an Expert**

Defendant contends that Belk cannot be considered an expert under Rule 702 for testimony relevant to the operation of firearms generally or pistols specifically. ECF No. 38, pp. 6, 9-11. Defendant's overall position is that Belk is simply a gunsmith who repairs and assembles firearms

5

according to manufacturer specifications and does not have the requisite knowledge regarding firearm design to be permitted to offer an opinion regarding the Subject Pistol. Defendant emphasizes that Belk does not have formal education in mechanical engineering or another relevant discipline, has never worked for a firearm manufacturer, and has admitted to not having any experience in firearm design or development. Defendant also notes that Belk has not had any formal training in firearm handling in nearly 50 years and that the training he did receive was with revolver style pistols, which is inapplicable to the semi-automatic "striker fire" operation of the Subject Pistol. Defendant asserts that this inexperience is reflected in Belk's antiquated view that the semi-automatic pistols that are ubiquitous in modern law enforcement should be replaced by six-shot revolver pistols. Defendant cites to *Khoury v. Philips Medical Systems*, 614 F.3d 888 (8th Cir. 2010) and *Krueger v. Johnson & Johnson Pro., Inc.*, 66 F. App'x 661 (8th Cir. 2003) as analogous cases in which the Eighth Circuit affirmed the limitation or exclusion of expert testimony because the proffered testimony moved beyond the bounds of the expert's knowledge and experience.

In response, Plaintiffs argue that Belk's nearly life-long experience with firearm handling, assembly, and maintenance makes him clearly qualified as an expert under Rule 702. ECF No. 43, p. 6. Plaintiffs contend Belk's decades of experience with firearm operation and as a gunsmith is apparent from his CV. Plaintiffs dispute that Belk does not have experience designing firearms because he has assembled various custom firearms for customers over his years as a gunsmith. Plaintiffs further contend that Belk's experience with rifles is relevant to this matter because the firing action for rifles is analogous to the striker fire mechanism of the Subject Pistol.[4] Plaintiffs

---

[4] Plaintiffs attach an affidavit from Belk (ECF No. 43-2) in which he asserts that "[b]olt action rifles operate the same way as a striker fire pistol."

assert that Belk clears the liberal threshold for being admitted as an expert and that any shortcomings identified by Defendants goes toward weight and credibility.

In reply, Defendant contends that Plaintiffs' admission that Belk does not have experience designing the type of pistol at issue in this matter is dispositive that Belk lacks the relevant expertise. ECF No. 49, p. 2-4. Defendant also disputes that bolt action rifles are analogous to striker fire pistols and that Belk's self-serving affidavit to the contrary has no evidentiary support beyond his assertion. Defendant cites Bureau of Alcohol, Tobacco, and Firearms information guides to demonstrate the diversity within and between pistols and firearms and to paint Belk's shallow assertion of similarity as incredulous. Defendant also emphasizes that Plaintiffs and Belk do not acknowledge any differences between the internal safety mechanisms of the Subject Pistol and the bolt action rifles with which Belk claims to have extensive experience.

The Court finds that Belk can be considered a general expert in firearms for the purpose of this litigation. Rule 702 states that a witness can be an expert because of their "knowledge" or "experience." As demonstrated by Belk's CV (ECF No. 43-1), Belk has extensive experience working with firearms, including assembly and repair, going back over fifty years. Though Defendant emphasizes that Belk does not have specialized knowledge with pistols, the Court is satisfied that his general knowledge permits admission to discuss the workings of the CW-40 generally under the liberal threshold for admissibility. *See In re Wholesale Grocery*, 946 F.3d at 1001. Any weaknesses that Defendant identifies in Belk's experience or knowledge goes to the credibility and weight of Belk's testimony.

### B. Facts and Data Underlying Belk's Opinion

Defendant argues that Belk's opinion is not supported by sufficient facts or data as required by Rule 702(b). ECF No. 38, p. 11-13. Defendants emphasize that Belk has admitted that his

7

opinion in this matter is based solely on representations of the incident relayed by Plaintiffs' counsel and an examination of an example CW-40 pistol. Defendant then notes that Belk did not examine the Subject Pistol or its spent ammunition, any testimony from other witnesses, the law enforcement report made for the incident, or the report prepared by Defendant's retained expert witness. Defendant contends that such a limited examination of the circumstances cannot form an admissible opinion. Defendants then note that Belk never considered or ruled out alternative explanations for the round discharged from the Subject Pistol and simply assumed it was a drop fire. Citing *Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605 (8th Cir. 2020), Defendant asserts that a failure to eliminate alternate causes of the discharge or even consider alternate explanations is fatal to admissibility.

In response, Plaintiffs argue that Defendant misconstrues the purpose of Belk's testimony. ECF No. 43, p. 7-9. As to Defendant's contention about Belk relying on counsel's representations, Plaintiffs assert that counsel simply relayed the same information that Belk would have garnered from the law enforcement report or from Mr. Finney. Plaintiffs then state that Belk's testimony is only meant to show that a CW-40 was capable of a drop fire, which does not require Belk to review the particulars of the incident with Mr. Finney. Plaintiffs also contend that such an opinion does not require the examination of alternatives because Belk's opinion testimony is limited to what the mechanics of the Subject Pistol make possible.

In reply, Defendant argues that Plaintiffs are blatantly shifting what the proffered purpose of Belk's testimony is despite the clear statements in Belk's report opining that a drop fire occurred. ECF No. 49, p. 2. Defendant then contends that even if Belk is limiting his opinion to what the Subject Pistol was mechanically capable of doing, his opinion is still not supported by sufficient facts. *Id.* at p. 4. Defendant stresses that Belk never performed any testing on the

example CW-40 to confirm his hypotheses regarding potential mechanisms of a drop fire for that model pistol.

The Court finds that Belk's opinion is based on sufficient facts to the extent that Belk's opinion is limited to whether the Subject Pistol was capable of a drop fire, as opposed to opining that the Subject Pistol did drop fire. Defendant is correct that Belk's expert report does make affirmative statements that a drop fire occurred.[5] Because Belk did not do any examination of the Subject Pistol, directly review evidence pertinent to the incident with Mr. Finney, or review the report of Defendant's expert who did examine the Subject Pistol, Belk did not rely on sufficient facts to form an admissible opinion as to whether a drop fire did occur during the incident with Mr. Finney.[6] If Belk's opinion is limited to whether the Subject Pistol is simply capable of a drop fire, Belk's examination of a separate CW-40 pistol, combined with his knowledge and experience with firearms, is sufficient to form the basis of such an opinion. Defendant's arguments about Belk's failure to consider alternative causes for the incident discharge are not pertinent under this more limited scope of opinion that only addresses broad characteristics of the CW-40. Thus, the Court finds that Belk's opinion, to the extent it is limited to what is mechanically possible with a CW-40, generally satisfies Rule 702(b).

However, as explained below, the methodology of Belk's examination of the example CW-40 is inadequate for admissibility.

---

[5] This position is clearest in Belk's assertion that "The evidence is overwhelming that the guns DID fire when they struck the floor." ECF No. 37-4, p. 2.
[6] Belk confirmed in his deposition that his opinion is based entirely on Plaintiffs' counsel's representations and an examination of a separate Kahr Arms CW-40 pistol. ECF No. 37-3, pp. 5-6, 9-10. Note that the Court is referencing the ECF page numbers for Belk's deposition and not the deposition transcript page numbers.

**C. Belk's Principles and Methodologies**

Defendant argues that Belk's opinion is deficient under Rule 702(c) because he did not attempt or utilize any testing methods to confirm his general hypotheses regarding the possibility of a drop fire. ECF No. 38, p. 13-18. Defendant emphasizes that Belk did no testing to corroborate any of his three hypotheses of how a drop fire could mechanically occur within a CW-40. Defendant notes that Belk confirmed in his deposition that he never witnessed or experienced his example CW-40 acting in any of the ways he hypothesized, or that he ever manipulated it to do so. Defendant also emphasizes that Belk confirmed in his deposition that he is completely dismissive of industry standard "drop tests" and their usefulness in determining the potential of a firearm to drop fire. Defendant contends that Belk's opinion is simply an *ipse dixit* argument with an insurmountable gap between his assertions of what is possible and the complete absence of any testing to support those assertions.

In response, Plaintiffs generally argue that Belk's methodology is adequate to support his opinion regarding whether a drop fire is mechanically possible in the CW-40 model pistol. ECF No. 43, p. 9-10. Plaintiffs dispute the importance of conducting drop fire tests because it is impossible to recreate the exact circumstances of a particular incident. Plaintiffs note that Belk reiterates that position in his affidavit. ECF No. 43-2. Plaintiffs also contend that there is not an analytical gap between Belk's methods and opinions because he is only testifying as to what the mechanisms of the CW-40 generally make possible.

In reply, Defendant argues that there is an inconsistency between Plaintiffs' newly asserted scope of Belk's opinion and Plaintiffs' argument that testing was not necessary. ECF No. 49, p. 4-5. Defendant notes that Plaintiffs have pivoted to limiting Belk's opinion as to what is mechanically possible with the CW-40. Defendant then contends that if Belk is not offering an

opinion as to what specifically happened during the incident with Mr. Finney, his rationale for not performing any drop tests on the CW-40 disappears. Defendant asserts that an opinion on what is generally possible regarding a drop fire should be founded on the generally applicable industry standard testing for drop fires. Defendant reiterates that the lack of any appropriate testing for Belk's general hypotheses renders his opinion inadmissible *ipse dixit* testimony.

The Court finds that Belk's opinion is not supported by reliable methods and principles as required by Rule 702(c). The expert admissibility factors regarding the testability of an expert's theory and the general acceptance of their methodology are salient to this issue and weigh against admission. *See Kuhn*, 686, F.3d at 625. Defendant identifies an organization, the Sporting Arms and Ammunition Manufacturers' Institute ("SAAMI"), which has developed a standardized protocol for drop testing firearms to determine their propensity to drop fire.[7] SAAMI and its standards are accredited by the American National Standards Institute.[8] Thus, there exists at least one commonly accepted method to test Belk's hypotheses regarding the CW-40's potential to drop fire. However, Belk conducted no testing pursuant to SAAMI's standards, a personally developed standard, or other standardized protocol to confirm or further explore his three hypothesized mechanisms that would permit a CW-40 drop fire.[9] *See Krueger*, 66 Fed. App'x at 662 (affirming a district court's refusal to admit experts' testimony, noting that "[n]either expert conducted any testing to support their design defect or alternative design theories.") Belk's opinion rests on nothing more than an examination of a model CW-40 and inferences based upon his knowledge

---

[7] *See* SPORTING ARMS AND AMMUNITION MANUFACTURERS' INSTITUTE, INC., *Voluntary Industry Performance Standards Criteria for Evaluation of New Firearms Designs Under Conditions of Abusive Mishandling for the Use of Commercial Manufacturers*, at 2 (2023).
[8] *See* AMERICAN NATIONAL STANDARDS INSTITUTE, *ANSI Accredited Standards Developers*, https://www.ansi.org/american-national-standards/info-for-standards-developers/accredited-standards-developers (last visited Aug. 5, 2024).
[9] Belk confirmed in his deposition that he conducted no testing relevant to his three hypotheses. ECF No. 37-3, pp. 16-17, 30, 35.

11

and experience. Without objective testing or demonstrable mechanisms to support his hypotheses, Belk's opinion is the type of *ipse dixit* testimony that relies almost entirely on his status as an expert and does not clear the bar for admissibility. *See Joiner*, 522 U.S. at 146.

Further, Defendant is correct that there is a contradiction inherent within Plaintiffs' reworked scope of Belk's opinion and their argument that drop testing was not relevant for Belk's opinion. Though Plaintiffs' and Belk's stated criticism of drop testing is that it cannot recreate the exact circumstances of a prior event, Belk's opinion seems to now be limited to what is generally possible with the CW-40 and not what specifically happened with the Subject Pistol. Thus, a more general form of testing, such as the SAAMI drop test protocol, should be supporting Belk's opinion on the general potential for the CW-40 to drop fire. Again, no such testing was done to support Belk's opinion. Accordingly, Belk's opinion that the CW-40 has the potential to drop fire is not supported by reliable principles and methods and cannot be admitted under Rule 702(c).

Though Belk's opinion is not admissible for failure to adhere to Rule 702(c), the Court will address Defendant's remaining arguments regarding the admissibility of Belk's opinion below.

### D. Manufacturing Defect Testimony and Helpfulness

Defendant argues that Belk should not be permitted to testify regarding any manufacturing defect in the Subject Pistol. ECF No. 38, p. 19. Defendant contends that such testimony would be wholly unsupported because Belk did not review design specifications for the CW-40 or examine the Subject Pistol. Defendant also argues that Belk's broader opinion testimony would not be helpful to the jury because it would do nothing to assist in determining how the Subject Pistol discharged during the incident with Mr. Finney. *Id*. at p. 19-20. In response, Plaintiffs again assert that Belk's opinion is only meant to demonstrate that a drop fire is possible with the CW-40 and contend that the opinion would provide the jury with relevant information about the Subject

Pistol. ECF No. 43, p. 10-11. In reply, Defendant argues that Belk's opinion on whether a drop fire is possible is irrelevant to rebutting Defendant's argument that the evidence demonstrates the Subject Pistol did not drop fire. ECF No. 49, p. 5-7.

The Court previously determined that Belk could not offer an opinion on specific issues with the Subject Pistol and Plaintiffs acknowledge that Belk's testimony is only meant to address the CW-40 model generally. As to Defendant's argument regarding helpfulness, the Court finds that it cannot address that issue because it is unclear what specific claims Plaintiffs bring against Defendant. Plaintiff's Amended Complaint tosses in various phrases regarding warranty, negligence, and defect, but does not clearly articulate particular claims or cite to any specific statute regarding warranty or products liability. ECF No. 32. Also, Plaintiff's pretrial disclosure vaguely states that their claims are for "products liability" without any further elaboration. ECF No. 47, p. 1. Without knowing what Plaintiffs' claims are, the Court cannot make an appropriate determination as to whether any potential testimony from Belk would be helpful to the jury under Rule 702(a).

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion to Strike Plaintiff's Expert (ECF No. 37) should be and is hereby **GRANTED**. Plaintiffs' expert Jack Belk is hereby barred from presenting his expert opinion at the trial in this matter.

**IT IS SO ORDERED**, this 13th day of August, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge